Judge TJiraEtiwooD
delivered the opinion of the Court.
G. M. Bedikqer and Wm. Bartlett, owned the lands including the lower Blue licks on both sides Licking river. The tract held by each, was held separately, and not jointly. The line, dividing their tracts, passed through the centre of both salt'springs, to wit: The spring on the north, and also that on the south side of Licking. The original pa-tentee, who owned both springs, and the land around both, had sold out to different persons; and in the deeds of conveyance, describing the dividing line, called for the centre of the salt springs; thus manifesting an intention, beyond all doubt, to divide the advantages arising from the salt water, equally between his vendees. Under this division of the springs, the land fell into the hands of Bedinger and Bartlett. Bartlett determined on his side of the line. *553 lo lay off a part of his land into lots, and to establish a town thereon*
Accordingly he had a survey made,-laying off a portion of his lán^ into streets, and alleys, and lots, thirteen poles long, and six and a half 'poles wide, One of his streets, called Front street, was laid off thirty feet wide, and bound upon the line between him and Bedinger, and included his half of the salt spring, on the north side of Licking. After Bartlett had laid on his town, and given to it his own name, and before any establishment thereof by law, he proceeded to sell out his lots, and disposed of a number of them at public auction. ' '
Bartlett repeatedly declared, that the streets and alleys, and the interest he had in the salt spring, were to remain public, for the use of the town; and his crier, who sold the lots, was directed-so to proclaim it on the days of sale, and did so. The crier made the proclamation when lot No. seven was sold, in the presence of Bedinger, who bought said lot,-and which is situated near the salt Spring. ,
Bartlett sold to Williams some lots in the town, and some land, and the ferry across Licking, and gave his bond to make a title. Williams assigned this bond to Radford. Bartlett, in 1818, executed a deed of conveyance to the property described in the bond, to Radford; who, on the same day.,- conveyed it to Whittamore. . ,
In the deed from Bartiett to Radford, and from him to Whittamore, the following clause is inserted: “Also, to have the entire and free privilege of using, and causing to be made use of, in common with others, the salt water, and benefits arising, from the spring on the north side of Licking, as herein before described, and made mention of, to the said Radford, (in the deed executed by Bartiett, and to the said Whittamore, in the deed executed by Radford,) and his heirs and assigns forever.” Bartlett’s bond to Williams, bears date in March, 1816, and contains no stipulation, that Williams shall have any right to the salt water.
*554 In March, 1817, Bedinger contracted with Bartlett, for certain lands; and they entered into articles of agreement, signed by both, in which it is stated, that “said Bartlett sells to said Bedinger, a tract of land at the lower Blue licks, containing about twelve or fourteen acres, being the balance unsold by him, of Bart-lettsburg, agreeably to a plat of the town, and to make said Bedinger a general warranty deed for the same.”
Under this clause, in the agreement, Bedinger not only claims,the unsold lots in Bartlettsburgb, but he likewise claims the streets and alleys; and, consequently, all the interest which Bartlett ever had in the salt spring on the north side of Licking. To assert this right, Bedinger filed his bill against Bartlett, Whittamore, Ballingall, &c. praying, that Ballingall, Whittamore’s tenant, might be compelled to surrender possession of the part of the spring, enjoyed by him; that Whittamore might be compelled to relinquish his title, derived under the deed from Radford; and that Bartlett might be compelled to convey, according to his contract.
it is satisfactorily proved, that Radford and Whit-tamore, had notice of Bedinger’s claim before the ■execution of the deeds of conveyance, and there would be no ground for refusing the relief sought for, by regarding Whittamore as an innocent purchaser, without notice, unless Williams, under whom Whit-tamore, through Radford, claims, had an equity equal or superior to that of Bedinger; or unless Bed-inger’s covenant on Bartlett, should be so construed, as to impose no obligation upon Bartlett, to convey to Bedinger the streets and alleys in Bartlettsburg.
Was Williams’s equity equal or superior to Bedinger’s? Has Bedinger any equity at all, in respect to the streets and alleys, under his contract? In answer to the first question, we are of opinion, that the statements made by Bartlett, that the streets and alleys, and salt springs, were for public use; bis authorizing and directing the crier so to proclaim it; and the fact that it was so proclaimed, were equivalent on the part of Bartlett, to a parol contract, with the purchasers of lots inBartlettsburg, that they should enjoy *555 cbe «se of the streets and alleys, and'water forever. Such contracts not -being absolutely void, are good for many purposes, and do, frequently, constitute valid considerations in equity.
As Bartlett, in his deed to Radford, chose to recognize what he had verbally promised the owners and purchasers of lots in his town, and secured in the deed, what he had so promised, we are of opinion,. that the equity of the vendee, thus secured, relates to the date of the sale of the lots. This overreaches any equity of Bedinger’s, under the supposition, that his contract gave him a right to the streets, alleys, and salt spring. That Bedinger, before he contracted with Bartlett, in 1817, .had full notice that the streets, alleys, and. spring, were reserved for the use of the purchasers of lots, and as inducement to make the lots sell high, there is not a shadow of doubt. An attempt on his part, thereafter, to deprive the purchasers of lots of these advantages, (and without which, their lots might be worthless) when Bartlett was willing to secure them to the purchasers, cannot' be favored in a court of equity; Upon this ground, therefore, the circuit court did right,'in dismissing the bill, as to Williams, Radford, Whittamore, and Ballingalh
Whether the town of Bartlettsburg had been legally established, according to law, at the date of Bartlett’s deed, in 1818, cannot, in our opinion, affect the controversy. If it had been, the title to the lots, streets,. &c. was vested in the trustees, and Bedinger would have had no cause to sue Williams, Radford, Whitta-mor.e, and Ballingall, without also bringing the trus* tees before the court, and if the town was legally established, and the streets and alleys, vested in trustees, and Bedinger had made them-parties, he could' not have succeeded. We see no error in refusing to. permit Bedinger to file his amendatory bill»
In respect to the spring, on the south side of Licking, it is not alleged that he has been actually obstructed in the use of the water, by any of the defendants; and, therefore, the case of Lyon vs. Ross and wife, I. Bibb, 466, is not analogous. If, as he supposes, that spring is altogethenon his side the line, he has nothing to do but to take possession, and let *556 those who may assert claim to the use of it, sue him.,, as we believe, the water of that spring, is only half his, and a controversy should, hereafter arise, by either claimant obstructing the other, a court of chancery may properly interpose, to settle the controversy,. Until then, we shall leave the parties in stalu quo.
Petition for a re-hcaring.
Wicklijfe, T. Ji. Marshall, and John Trimble, for appellant; Crittenden, Mills, and Brown, for appellees.
It is not improper to remark, that the expressions used in the agreement, between Bedinger and Bartlett, do not, under the facts exhibited, necessarily convey the idea to our minds, that the streets, alleys, and salt spring, were contracted by Bartlett to Bed-inger. Bartlett parted with the balance of his ground in Bartlettsburg, “unsold by him.” May not this expression, properly mean the balance, which, according to the plan of the town, he had a right to sell, as lots, and no more? But, as there is no necessity to express a positive opinion, on this point, we shall forbear to do it. The idea of a proprietor selling the streets and alleys of a town, after laying it off, and selling out lots, and thereby rendering the lots sold, useless, cannot be tolerated, unless it be clear and unequivocal. The facts on which this opinion is based, are established, without regarding the depositions objected to, on the score of interest.
The decree is affirmed with costs.